```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| DARYL MURRAY, | : | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | : | CIVIL ACTION NO. 09-5403 (JEI/AMD) |
| v. | : | **OPINION** |
| BEVERAGE DISTRIBUTION CENTER, INC., et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

DARYL MURRAY, *Plaintiff pro se*
2 Bell Lane
Burlington, New Jersey 08016

BLANK ROME, LLP
By: Anthony B. Haller, Esq.
    Jennifer Hale Eagland, Esq.
    Terry D. Johnson, Esq.
301 Carnegie Center, 3rd Floor
Princeton, New Jersey 08540
        Counsel for Defendants Beverage Distribution Center,
        Inc.; Jeffrey Honickman; Gwen Dolceamore; Jeffrey M.
        Stanley; Lewis I. Gantman; Santo Bonanno; and Walt
        Wilkinson

**IRENAS**, Senior District Judge:

   Plaintiff Daryl Murray, an African-American male, asserts that Defendant Beverage Distribution Center, Inc. ("BDCI") and its co-Defendants, various officers and vice presidents of the company, have repeatedly refused to hire him, based on discriminatory and retaliatory reasons in violation of 42 U.S.C. § 1981 and New Jersey's Law Against Discrimination ("NJ LAD"),

N.J.S.A. 10:5-1 et seq.[1]  Defendants move for summary judgment. For the reasons stated herein, the Motion will be granted.

## I.

BDCI, located in Pennsauken, New Jersey, provides administrative and warehouse services for Pepsi Cola and other soft drink companies.  During 2007 and 2008, BDCI was looking to fill three positions in its Management Information Systems ("MIS") Department.  (Wilkinson Dep. p. 76-81; Bonanno Dep. p. 33-34)  During this same period of time, BDCI used two different recruiting companies-- first the Work Place Group ("WPG") and later, Source One-- to collect resumes and screen candidates for the open positions.  Murray's claims in this suit are solely based on BDCI's failures to hire him in 2008.  However, as both parties explained at oral argument on the Motion, Murray's prior interactions with Defendants must be considered to place the present claims in their proper context.[2]

---

[1]  This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

[2]  The Complaint asserts claims for failure to hire / retaliation in 2007 and 2008.  However, Murray specifically stated on the record during oral argument that, in this suit, he only asserts claims based on events in 2008; and, indeed, his briefs in opposition to the instant Motion state the same.
  Murray is litigating claims related to the prior incidents in a separate state court suit.  The state court recently granted summary judgment to the defendants in that suit.  Murray's motion for reconsideration of that decision is presently pending. Defendants in this suit have argued that certain state court

*The First Incident*

On January 8, 2007, Murray sent his resume in response to WPG's internet posting for an "MIS Project Manager" position at BDCI. (Def's Statement of Undisputed Facts and Plaintiff's Response thereto (collectively, "SUF"), ¶ 38[3]) Two days later, Sara Salvatore, a recruiter with WPG, contacted Murray by telephone. (Salvatore Dep. p. 12; Murray Dep. p. 207) With regard to that conversation, Murray testified,

> [Salvatore] started by saying that she was contacting me in response to the position. She started to briefly talk about the position and she immediately wanted . . . me to complete an assessment . . . she wanted to send me something to complete and I immediately put the brakes on the conversation by letting her know that . . . I had already applied to [BDCI] in November 2006 and had not gotten a response back. [Also,] I let [Salvatore] know that I had some concerns about their hiring practices, and that's when [she] . . . confirmed that Gwen Dolceamore and Bonnie Poller were the two hiring managers. . . . I asked [Salvatore] to please go back and talk to Gwen Dolceamore, because it was my perception that Gwen Dolceamore had a problem with me based on my race and based on my gender coupled with my qualifications, because she had previously told me that

---

findings have preclusive effect on the issues raised in this suit. Because the basis for the state court's decision is somewhat unclear in the present record, this Court makes no ruling on the preclusive effect of any decision rendered by the state court.

[3] See also Declaration of Darryl Murray in Opposition to Defendants' Motion to Dismiss, Ex. B (January 5, 2007 job posting on Dice.com)

I was overqualified.[4]

(Murray Dep. p. 207-08)  Salvatore's version of the conversation is substantially similar.  (See Salvatore Dep. p. 33-34)

Salvatore testified that after that telephone call, she did not contact anyone at BDCI regarding Murray's qualifications and did not further consider Murray's candidacy because of what she perceived to be his "poor attitude on the phone."  (Salvatore Dep. p. 33-34)

On February 7, 2007, when Murray had not heard back from Salvatore, he emailed her to inquire about the status of his application.  (Defs' Ex. 11)  After Salvatore replied that BDCI had narrowed its search to two candidates and had "completed interviews," Murray responded,

> I am curious to know how [BDCI] has narrowed the selection down to 'two candidates' given the fact that I was never interviewed, and given the fact that I have been waiting several weeks for you to personally get back to me concerning your conversations with [Gwen Dolceamore and Bonnie Poller] concerning my specific application and resume.  Especially given the fact that I have a long history of adverse dealings with your client with respect to my credentials and prior applications for employment.
>
> Also, to insure [sic] that [BDCI] has not committed any violations of the New Jersey Law Against Discrimination Act, I am interested in knowing whether either of the two candidates are (1) African-American; (2) both women; and whether your client considered and/or interviewed any qualified African American males for the position.

---

[4]  As referenced in footnote 2 *supra,* Murray's previous applications for employment with BDCI are the subject of a separate state court discrimination lawsuit.

> If not, you may consider putting [BDCI] on notice that a Complaint under the New Jersey LAD statute will likely be forthcoming.
>
> I look forward to your belated response.
>
> Thank you.

(Defs' Ex. 11)

WPG's internal records indicate that on the following day, Salvatore changed Murray's application status to "Not Qualified" and "closed" his application. (Pl's Ex. 5) The accompanying explanation reads, "[t]his candidate has placed us on notice that he will be pursuing legal action against us and [BDCI]. Thus we can no longer communicate with this individual." (Id.)

Around this same time, in early February, Mila Edelman, Salvatore's supervisor, contacted Defendant Jeff Stanley, BDCI's Senior Vice President of Human Resources, regarding Murray's telephone call and subsequent email communication with Salvatore. (Stanley Dep. p. 58-61)[5] Stanley, in turn, called Murray to discuss Murray's "concerns and frustrations." (Stanley Dep. p. 62-63)[6] Stanley testified that he understood Murray to be uninterested in "resolv[ing] this case without taking legal

---

[5] While there is no evidence in the record regarding how Edelman came to learn of Murray's communications, presumably Salvatore contacted her supervisor following Murray's email which threatened legal action.

[6] Murray repeatedly asserts that he never used the word "frustrated" in any of his communications with Salvatore or Stanley.

5

action." (Id.)

With regard to this same conversation with Stanley, Murray states,

> I first identified myself as a black male. I also expressed . . . that I had previously applied for employment with [BDCI] in November 1985, June/July 2000, July 2005, and in November 2006 and after consideration of the treatment I received I believed that my applications were rejected by Gwen Dolceamore because of her sexist attitude toward males in general and her racist attitude toward black males, particularly me. . . . I made it clear to Mr. Stanley that I was not interested in any hush money or out of court settlements but that I was only interested in receiving an equal opportunity for employment and securing a good paying job with benefits for which I was qualified to fill and do.

(Murray Cert. ¶¶ 47, 49)

Weeks later, on March 7, 2007, Murray filed a formal complaint of discrimination against BDCI with the New Jersey Division of Civil Rights. (Defs' Ex. 1)[7] Murray and BDCI then engaged in the Division's mediation process throughout May and June of 2007 but were unable to resolve their disputes. (See generally SUF ¶¶ 53-54)

Nothing in the record indicates that the position advertised in January, 2007 was ever filled.

---

[7] Murray strenuously disputes that he filed a complaint against BDCI because the complaint names "The Honickman Group d/b/a Pepsi/Canada Dry," not BDCI, as the respondent. However, the complaint lists BDCI's address as the respondent's address; appears to concern positions at BDCI; and specifically identifies Gwen Dolceamore, who was Vice President of Information Technology at BDCI. (Defs' Ex. 1)

6

*The Second Incident*

In May of 2007, WPG posted an "MIS Project Manager" opening for BDCI. (Murray Dep. p. 182-83[8]) Instead of applying through WPG, on May 19, 2007, Murray mailed his resume, CV, and other related materials directly to BDCI. (Id. p. 183; Defs' Ex. 5)

After consulting with its attorneys, BDCI directed Murray to submit his application through WPG. By letter dated July 9, 2007, Defendant Stanley advised Murray, "[BDCI] does not handle its recruiting function internally. Rather, it out-sources this function to a third-party – The Workplace Group. . . . [P]lease contact Mila Edelman at the Workplace Group, 973-377-4665 (ext. 204) to determine next steps in the application and assessment process. Ms. Edelman is expecting your call." (Defs' Ex. 17)

In response, on July 24, 2007, Murray wrote to Stanley, stating,

> . . . Mr. Stanley, there is zero rationality in continuing a fruitless dialogue with [WPG] which has previously demonstrated a tortious pattern of unlawful discrimination against me. . . .
>
>     . . .
>
>     . . . [A]lthough I welcome any employment and/or business opportunities which Pepsi-Cola/BDCI would like to discuss with me, I think that it would be a conflict of interest and ethically inappropriate for me to have any further conversations with WPG's employees/agents . . . . Sara Salvatore and the WorkPlace Group, Inc. have

---

[8] See also, Declaration of Darryl Murray in Opposition to Defendants' Motion to Dismiss, Exs. C & D (May 11, 2007 job postings on Dice.com and careerbuilder.com)

>been named as co-defendants in [my] civil action recently filed in the Superior Court of New Jersey[9]. . . .
>
>As such, all future communications on any issues related to these disputes should be by and between Pepsi-Cola/BDCI's counsel, WPG's counsel, myself and/or my retained counsel.

(Defs' Ex. 2)

On July 31, 2007, BDCI's counsel wrote to Murray:

>. . . It is your decision whether or not to contact the WorkPlace Group. However, as you have already been advised, recruiting for the MIS Project Manager Position is being handled exclusively through the WorkPlace Group. Therefore, to remain in the recruiting process, you must contact the WorkPlace Group directly– as all candidates are required to do. The fact that you have sued both [BDCI] and the WorkPlace Group does not entitle you to any different treatment in this process.
>
>If you choose not to contact the WorkPlace Group **by August 7, 2007** to determine next steps in the application process, your application will be considered voluntarily withdrawn from the process. [BDCI] will not be accepting nor responding to any additional correspondence or telephone calls from you regarding your application for this position.

(Defs' Ex. 17)(emphasis in original).

Murray called Mila Edelman at WPG on August 1, 2007, and she returned his call the following day. (SUF ¶ 63) Edelman intended to "put [him] through the assessment process" at that time by placing Murray on speaker phone and taking "notes" on his answers. (Edelman Dep. p. 51) Murray did not want to proceed with the assessment at that time because he believed that WPG did not have a valid certificate of incorporation or business

---

[9] Murray filed his state court suit on July 17, 2007.

license.[10] (Id. p. 51-54; Murray Dep. p. 47-51) Murray requested that Edelman get back to him with answers to his questions regarding the status of WPG's certificate of organization and license; and he also asked her to identify the "hiring manager" at BDCI, because of his concerns that it might be Gwen Dolceamore. (Murray Dep. p. 47-51; Murray Cert. ¶ 51) It is undisputed that Edelman never got back to Murray with answers.

On August 3, 2007, BDCI offered Charles Whalen an MIS Project Manager position. (Pl's Ex. 14) Whalen began working in September, 2007, but resigned within a few weeks. (SUF ¶ 68) He was eventually replaced, but nothing in the record indicates when he was replaced, or by whom.[11]

*The Third Incident*

Towards the end of 2007, BDCI decided to switch from WPG to Source One for recruiting services. (Bonanno Dep. p. 22-23, 38) In October, 2007, Source One posted a "Project Manager- AS 400

---

[10] There is evidence in the record suggesting that the WorkPlace Group's certificate of incorporation was indeed revoked at that time. (Murray Ex. V)

[11] Defendant Wilkinson testified: "Q: . . . Was Mr. Whalen replaced?; A: Yes.; Q: And who replaced him? A: Sorry. I don't remember." (Wilkinson Dep. p. 81)

Applications" position on behalf of BDCI[12], which Murray saw. (Pl's Ex. 15)[13] Murray explained why he decided not to submit his application in response to the Source One posting: "What was the point [of applying]? . . . [BDCI] had my resume, so what was the point of me applying again when I had already expressed an interest in employment?" (Murray Dep. p. 252-53)

Henry Hollin did respond to the October, 2007 Source One posting, but BDCI hired him for a more senior level position, "Manager of AS/400 Services," not the position that Source One posted. (Bonanno Dep. p. 33-34)

BDCI hired Scott Seveland, who was screened by Source One, for a "programmer" position in March, 2008. (SUF ¶¶ 79, 81)[14] Murray testified, "I was not aware of the programmer analyst position until . . . sometime [in] late 2008 well after Mr. Scott Seveland had been hired for the position." (Murray Dep. p. 44-

---

[12] The posting did not identify BDCI as the employer. Murray asked an associate of his to inquire as to the employer's identity, which is how Murray learned that it was BDCI.

[13] The responsibilities of the "MIS Project Manager" position and the "Project Manager– AS/400 applications" position are almost identical, and both require "a computer science degree or equivalent experience." (Compare Pl. Ex. 15 with Declaration of Darryl Murray in Opposition to Defendants' Motion to Dismiss, Exs. B, C & D) At oral argument, the parties agreed that the positions were functionally equivalent.

[14] The exact title of the position is somewhat unclear. The Source One recruiter referred to the position as "computer programmer." (Guglielmo Dep. p. 23) Bonanno referred to it as a "Programmer Analyst." (Bonanno Dep. p. 31) Unlike the other positions, the record does not include the internet posting for the position.

10

45)[15]

Murray filed this suit on October 20, 2009, alleging race and gender discrimination, and retaliation, in violation of 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination.  He also asserts that BDCI and its CEO, Defendant Jeffrey Honickman, negligently hired, supervised, and trained the other Defendants.[16]

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See also, Anderson v. Liberty Lobby, Inc.*,

---

[15] In any event, Murray states that he would not have applied for the programmer position through Source One because he does not "do business with" Angelo Guglielmo, the Source One recruiter.  (Murray Dep. p. 43) (Murray's deposition testimony obliquely references past dealings with Guglielmo, the nature of which is not disclosed by the record.)  Murray further testified, "we all know that Mr. Guglielmo was representing BDCI, he wouldn't have dealt with me either. . . . that's called being [']priored['].  I would have let him know immediately, just like I let Sara Salvatore know in January of 2007 that I already sent my resume and my credentials to his client, and that there's probably a conflict of interest."  (Id. at p. 44)

[16] Plaintiff has also moved to amend his Complaint, however, for the reasons set forth in a separate order issued on even date with this opinion and accompanying order, the Motion to Amend will be denied.

11

477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania,* 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 252.

### III.

The Court first addresses the discrimination and retaliation claims before turning to the negligence claims.

### A.

Murray asserts that Defendants refused to hire him for the position posted by Source One in October, 2007 (filled by Scott Seveland in 2008), despite several opportunities to do so, because he is a black male, and in retaliation for his formal complaints of discrimination.

### (1)

Defendants move for summary judgment, asserting that Murray's admitted failure to cooperate with the application process, and simply failing to apply at all, precludes his failure to hire claims as a matter of law.

Before turning to the individual elements of a prima facie case of discrimination and retaliation, the Court first addresses Murray's overarching contention that he was not, as a matter of law, required to cooperate with the recruitment process, or even required to submit his resume, after having submitted it in response to past internet postings.  He extensively relies upon *EEOC v. Metal Service Co.*, which states in relevant part,

> the failure to formally apply for a job opening will not bar a . . .  plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer.
>
> . . .
>
>     A relaxation of the application element of the prima facie case is especially appropriate when the hiring process itself, rather than just the decision-making behind the process, is implicated in the discrimination claim or is otherwise suspect.

892 F.2d 341, 348 (3d Cir. 1990).

Murray's case is distinguishable from *Metal Service Company*. No reasonable factfinder could find in this case that Murray made every reasonable attempt to convey his interest in the jobs for which BDCI was hiring.  In contrast to the plaintiffs in *Metal Service*, Murray admittedly did not "follow[] precisely the

13

procedure established by [the employer] for how a person applies for a job with the company." 892 F.2d at 349. Indeed, the undisputed record shows exactly the opposite-- that Murray refused to cooperate at every turn.

When Sara Salvatore, in early 2007, on behalf of BDCI reached out to Murray about his application, Murray himself testified that he "immediately put the brakes on the conversation" (Murray Dep. p. 207), telling Salvatore about his prior contacts with BDCI, of which, the record indicates, Salvatore was completely unaware.

Even after Murray filed a discrimination lawsuit against BDCI, BDCI advised Murray in July 2007 that it would consider his application if he applied through the recruiter, but Murray refused to do so. Tellingly, Murray's asserted reason for not cooperating with the second recruiter with whom he spoke (Mila Edelman) was not that he believed her to be employing a discriminatory screening process, but rather, that WPG's business license was suspended. (Murray Dep. p. 47-51)

When Source One posted the job opening in October, 2007, Murray did not submit his resume to BDCI at all-- neither directly, nor through a recruiter.

The record, considered as a whole, supports only one reasonable conclusion: each time Murray allegedly "applied" for the positions at issue, he repeatedly behaved in an adversarial

14

manner towards a company against whom he was already pursuing a discrimination lawsuit.  A reasonable factfinder could only conclude that Murray's actions were *un*reasonable under the circumstances-- repeatedly rejecting opportunities to be considered for the positions-- and therefore he did not make a reasonable attempt to convey his interest in employment with BDCI.  Instead of supporting a conclusion that BDCI rejected Murray, the record supports the conclusion that Murray effectively rejected BDCI.

Turning to the prima facie case, Murray must prove that: (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he applied and was rejected despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position.  *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).[17]

Once the prima facie case has been established, BDCI must put forth a legitimate non-discriminatory reason for not hiring

---

[17] *Sarullo* involved a failure to hire suit brought pursuant to Title VII and the ADEA, but the same *McDonnell Douglas* framework also applies in discrimination suits brought pursuant to § 1981 and NJ LAD.  *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009); *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 97 (1990).

15

Murray. *See id.* at 797. Then Murray must put forth evidence that could lead a reasonable factfinder to conclude that BDCI's proffered reason is merely pretext for unlawful discrimination. *See id.*

Murray's prima facie case fails because he never applied for either the "Project Manager- AS 400 Applications" position or the programmer position. Murray asserts that BDCI should have kept his previous application materials on file and initiated contact with him when positions for which he was qualified became available. However, considering Murray's repeated refusal to cooperate with the hiring process, BDCI was under no duty to invite Murray to apply again.

Moreover, even if BDCI's failure to invite Murray to apply or interview was actionable, nothing in the record suggests that Defendants' reason for not doing so, Murray's previous refusals to cooperate with the recruiters, was pretext for a discriminatory motive.

Accordingly, Defendants' Motion for Summary Judgment will be granted as to the discrimination claims.

**(2)**

Murray also asserts that Defendants did not hire him in retaliation for his complaint to the New Jersey Division of Civil Rights and filing the state court discrimination lawsuit.

16

To establish retaliation in violation of § 1981 and NJ LAD, Murray must establish that (1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal connection between (1) and (2). *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 798 (3d Cir. 2010); *Craig v. Suburban Cablevision*, 140 N.J. 623, 629-30 (1995).

Similar to the discrimination claims, Murray's refusal to cooperate with the application process precludes his retaliation claims. Murray has put forth no evidence raising a question of fact as to whether BDCI had a retaliatory motive in failing to hire him. Indeed, the undisputed record demonstrates that even after Murray filed a lawsuit against BDCI, BDCI gave him an opportunity to apply for an open position-- an opportunity that Murray rejected when he refused to cooperate with Mila Edelman. The record evidence cannot reasonably support the conclusion that Murray's protected activity was the reason BDCI did not hire Murray.

Moreover, the record evidence does not support the conclusion that BDCI took an adverse employment action against him. As discussed above, Murray did not apply for either posted position, and BDCI was not obligated to invite Murray to apply or interview.

Accordingly, Defendants' Motion for Summary Judgment will be

granted as to the retaliation claims.[18]

### B.

Murray also asserts that BDCI and its CEO, Defendant Honickman, negligently hired, trained and supervised the other Defendants. Murray's negligence claims are dependent upon a finding that the individual Defendants discriminated or retaliated against him. However, as already set forth above, the record cannot support a finding of discrimination or retaliation. Accordingly, Defendants' Motion for Summary Judgment with respect to the negligence claims will be granted.

### IV.

For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted. An appropriate Order accompanies this Opinion.

Dated: November 23, 2010

                                              s/ Joseph E. Irenas
                                         **Joseph E. Irenas, S.U.S.D.J.**

---

[18] The individual Defendants assert that they cannot be liable for aiding and abetting BDCI's alleged discrimination and retaliation because Murray cannot establish the underlying discrimination and retaliation claims. The Court agrees, and summary judgment will be granted to the individual defendants on this ground.